TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: AFFIDAVIT OF FARID FATA - BIVENS
DATE: 04/26/2022 07:04:34 AM

CIVIL ACTION CASE No.

## AFFIDAVIT OF FARID FATA

I, Farid Fata, BOP Reg. No. 48860-039, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief.

1 - I am the Plaintiff in the above-entitled case. I write this affidavit to support my Memorandum Brief in Support of Bivens.

2- I am a federal prisoner, have been housed, over the past 6 years, in the housing unit, 1B lower, at FCI Williamsburg, South Carolina.

3- Between November 1, 2020 and December 15, 2020, three inmates in my housing unit became sick and tested positive for COVID-19. Health workers did not perform, upon request during mainline, contact tracing to test the exposed inmates as exposure of inmates who were still gathering in close proximity in the computer room and holding group activities in the community room, was known to prison officials.

4- My medical records, as enclosed, note that I have diabetes mellitus type 2, and neutropenia (low white blood cell count) that weakens my immune system that place me at moderate to high risk to contract COVID-19 and develop severe illness. Health workers did not test me for COVID nor quarantine my housing unit when the new COVID outbreak occurred in early December 2020.

5- On December 18, 2020, many inmates in my housing unit became acutely sick. I developed progressive cough and muscle aches and tested positive for COVID-19. I required acetaminophen treatment around the clock. I survived the episode but suffered long-term sequellae of brain fog, fatigue, headaches, muscle and bone pains known as long Covid. Since after I contracted COVID-19, I experienced recurrent infections associated with my weakened immune system best described in the Memorandum Brief as shown in my medical records.

My COVID-19 acute infection and long-term complications of lingering symptoms of long Covid plus recurrent infections that caused me considerable pain and physical injury could have been prevented had the warden and health workers acted on prison policies that adopted the standard CDC guidelines of contact tracing and testing and quaratining the exposed inmates and the housing unit when they first discovered COVID-19 in my housing unit in early December 2020. Instead, defendants ignored my repeated requests and disregarded the obvious harm caused by the exposure (whether known or suspected) to COVID-19 in my housing unit amid many violations of prison policies and memoranda as supported by the president of staff union Stephen Pinckney's account shown in exhibit I in my Memorandum Brief In Support of Bivens.

1

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

Importantly, I learned that inmate Shawn Dahl whom I met with on December 16-17, 2021 at the leisure library at FCI Williamsburg, had tested positive for COVID-19 and later died in the SHU (Special Housing Unit) after he returned from the hospital. As the BOP Director stated that COVID-19 inmates' death in the BOP could be prevented.

See Statement of Michael D. Carjaval, Director of BOP, before the Committee on the Judiciary, United States Senate, available at:

https://www.judiciary.senate.gov/imo/media/doc/BOP%20Director%20-%20%20Written%20Statement%20201-04-15%20SJC%20Hearing%20.pdf.

6- Defendants did nothing toward implementing contact tracing and testing after the exposure to inmates Lorone Elijah and Brandon Polston, or quarantining the inmates in my housing unit on May 6, 2021 and June 16, 2021 after two COVID outbreaks that rendered inmates sick. The virus spread kept lingering in the upcoming months as contagion among inmates remained inevitable.

7- My repeated requests to initiate contact tracing and testing early after each discovery of a COVID case in my housing unit fell on deaf ears. Not even quarantining those inmates who have been exposed or testing them at least weekly based on the BOP COVID-19 Infection Prevention Procedures Modifications, which caused obvious harm, hospitalization and even death that FCI Williamsburg warden and health workers were aware and could have prevented.

8- My motion and claims are not about disagreement of clinical judgment or a question of medical malpractice or negligence, it is about the "corrective inaction" and "the Deliberate indifference" disregarding the repeated need to intervene and act when health workers and the warden knew and were aware of the existence of obvious serious harm. "Even a lay person" would easily recognize that inmates Donald Cadarr's hospitalization, Shawn Dahl's death, and Brandon Polston's hospitalization for acute illness from COVID-19 require defendants to fulfill their non-discretionary duty to implement prison policies and memoranda to mitigate the spread of the virus and protect the lives of staff and inmates who have been exposed to obvious harm.

Signed on the 26th day of April 2022.

Respectfully Submitted

Farid Fata   *(signature)* 4-26-22
Farid Fata
Reg. No. 48860-039
FCI Williamsburg
8301 Hwy 521
Salters, SC 29590

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

FROM: 48860039
TO:
SUBJECT: MOTION TO SEAL EXHIBITS
DATE: 04/20/2022 05:40:13 PM

CIVIL ACTION CASE No.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| FARID FATA<br>Plaintiff, | )<br>)<br>) |
| v. | ) CIVIL ACTION No.<br>) JUDGE |
| BRIAN K. DOBBS<br>A. MENDOZA<br>STEPHEN HOEY, DO<br>K. NOLTE, HSA<br>Defendants. | ) MAGISTRATE<br>)<br>)<br>)<br>) |

## MOTION TO SEAL EXHIBITS

Plaintiff, Farid Fata ("Fata") moves to request that the Court grants his Motion to seal the Exhibits of his Civil Action lawsuit under Bivens in violation of the Eighth Amendment, as the exhibits contain sensitive medical and personal records and prison documents.

Respectfully Submitted,

Farid Fata     *Farid Fata*  4-26-22
# 48860-039
FCI Williamsburg,
8301 Hwy 521
Salters, SC 29590

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: BIVENS MOTION - MEMORANDUM BRIEF
DATE: 04/26/2022 07:15:03 AM

CIVIL ACTION CASE No. -------------------------------

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FARID FATA,           )
Plaintiff,            )
                      )          CIVIL ACTION No.
v.                    )          JUDGE
                      )          MAGISTRATE
BRIAN K. DOBBS        )
A. MENDOZA            )
STEPHEN HOEY, DO      )
K. NOLTE, HSA         )
Defendants.           )

PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF BIVENS

JURISDICTION AND VENUE

Plaintiff, Farid Fata ("Fata"), ProSe, respectfully submits this Brief under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 29L. Ed. 2d 619 (1971) in violation of the Eighth Amendment. This Court has jurisdiction under 28 U.S.C. & 1331 and 1343. The District of South Carolina is an appropriate venue under 28 U.S.C. & 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

PARTIES:

1- Plaintiff Fata, a U.S. Citizen, is a federal prisoner housed at FCI Williamsburg South Carolina, provides the Memorandum Brief with factual allegations. Fata was at all times relevant to this action

2- Defendant Brian K. Dobbs was at all times relevant to this action the warden at FCI Williamsburg, South Carolina, and was acting under the color of federal law until his departure at the end of February 2021. By statute, the warden is responsible for ensuring the safety and protection of prisoners under his supervision. C.R.S.&17-1-104. By prison policy, the Bureau of Prisons has adopted the standard CDC guidelines for contact tracing and testing once COVID-19 outbreak arise in a housing unit, to mitigate the spread of the virus, prevent contagion and protect the lives of staff and inmates.

3- Same applies to Acting Warden, Defendant A. Mendoza who received Fata's emails on May 6, 2021 and June 17, 2021 and was aware of the new COVID-19 outbreaks and inmates exposure to COVID-19 in Fata's housing unit. On August 19, 2021, Mr. A. Mendoza responded to Fata's BP-229 as detailed in this Memorandum Brief.

4- Same applies to Defendants Stephen Hoey, DO, Clinical Director (CD) and Defendant K. Nolte, HSA, Health Services Administrator at FCI Williamsburg, South Carolina. Health workers involvement is extensive as detailed in this Brief.

4

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

FROM: 48860039
TO:
SUBJECT: BRIEF - BIVENS - PART I
DATE: 04/26/2022 07:35:55 AM

CASE No.                              FACTUAL ALLEGATIONS:

I - FATA CONTRACTED COVID-19 IN PRISON AS DEFENDANTS FAIL TO PROTECT THE LIVES OF STAFF AND INMATES CAUSING FATA IRREPARABLE LONG-TERM COMPLICATIONS FROM COVID-19:

1 - Fata is a 57 year old male with CDC-recognized medical conditions that place him at risk to develop severe illness from COVID-19. Fata has type II diabetes and chronic neutropenia that weakens his immune system to fight infections. https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html

2 - Between November 1, 2020 and December 18, 2020, at least three inmates in Fata's housing unit became sick and tested positive for COVID-19. Beginning December 2020, Fata had asked health workers during mainline to initiate contact tracing and test the inmates in his housing unit as inmate gatherings and group activities were still ongoing, absent physical distancing, but no intervention was taken and no surveillance testing was implemented in his housing unit.

3 - It was not until December 18, 2020, when many inmates in Fata's housing unit became sick from COVID-19:

(a) Fata is filing the affidavit of inmate Donald Cadarr who suffers insulin treated type II diabetes, hypertension and obesity, contracted COVID-19, became febrile with shortness of breath and diarrhea. He dropped his oxygen saturation and was hospitalized for "bilateral COVID Pneumonia". Mr. Cadarr received 5 days of Remdesivir plus decadron (steroid). He miraculously survived (Exhibit A). Mr. Cadarr gave Fata permission to file his hospital records under seal (Exhibit B).

(b) Fata was complaining of cough and muscle pains treated with acetaminophen (Exhibit C), and was isolated for 14 days after he tested positive for COVID-19 (Exhibit D) on December 18, 2021. See attached Fata's affidavit.

(c) Fata is filing the affidavit of inmate Okale Daniels who has pre-existing medical conditions, was isolated after he tested positive for COVID-19, and later experienced post-COVID cardiac arrhythmias and progressive kidney injury (Exhibit E). Mr. Daniels gave Fata permission to file his medical records under seal (Exhibit F).

(d) Inmate Shawn Dahl was isolated for COVID-19, experienced post-Covid cardiac complications requiring hospitalization. After discharge from the hospital, Mr. Dahl died in isolation at FCI Williamsburg after performing CPR (Cardio-Pulmonary Resuscitation). Inmate Nelson Del Rio Rodriguez who was 65 years old with pre-existing conditions, tested positive for COVID-19 on January 2, 2021. On January 6, 2021, he was placed on a ventilator and died on January 8, 2021 (Exhibit G).

4 - The common denominator of the inmates' health problems is the "early inaction" in testing these inmates for COVID-19 until they became sick that resulted in pain and hospitalization and even death that could have been prevented, had health workers acted early when COVID-19 was present in Fata's housing unit in early December 2020. Coreas v. Bounds, U.S. 2020 Dist. LEXIS 81900 (D. Md., Apr. 30, 2020)(constitutional violation from absence of any steps to protect high-risk inmates

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------

absent contact tracing and testing).

5 - The effect of the officials' Dobbs, Hoey, Nolte early inaction in performing contact tracing and testing in light of the narrow window of opportunity to mitigate the spread of the virus after known or suspected exposure to COVID-19 is well established in the medical records of the serious consequences and physical injury incurred from becoming acutely ill, or requiring hospitalization or even death. As of 2-6-2021, FCI Williamsburg had reported three COVID-19 inmate deaths, with 19 inmates and 36 staff with active cases. (www.bop.gov/coronavirus)(Exhibit H). Suffice to mention the long-term complications of pain and physical injury that Fata suffered as detailed below.

6 - In early January 2021, the president of staff union representing FCI Williamsburg's employees called for the removal of executive staff, alleging in part that the process of screening individuals entering the compound for potential COVID-19 symptoms was shifted from outside the facility to inside in early December 2020: "They made some changes on the process of what we were doing ... that allowed COVID to actually walk into the institution" - American Federation of Government Employees' Local 525 President Stephen Pinckney said at the time: "From here, it spread like a wildfire once it got in" (Exhibit I).

7 - Warden Brian K. Dobbs and health workers Dr. Hoey and K. Nolte ignored to fulfill their duty as gatekeepers to follow prison policies that adopted the standard CDC guidelines to mitigate the spread of the virus and protect the lives of staff and inmates, including those with pre-existing medical conditions, defying:

(a) the BOP Program Statement P6701.01, published on August 30, 2013, pages 5 to 10, where preventive health care services and testing of airborne infectious diseases that apply to the current COVID-19 pandemic will be offered based on CDC recommendations (page 8)) (Exhibit J). On page 6, the Program Statement specifies that the BOP adopted contact tracing and testing for airborne diseases as its own policy that prescribes a course of action:

  "If it is determined that a staff may have been exposed to ...(airborne disease), a contact investigation will be conducted according to CDC guidelines."

(b) Memoranda from the BOP published on June 30, 2020 and August 5, 2020, establishing "Action Plans" with "protective instructions" for federal prisons on how to manage the COVID-19 pandemic, based on standard CDC guidance. These plans did not involve an element of judgment or choice (Exhibit K). See Footnote 1.

FATA DEVELOPED LONG-TERM COMPLICATIONS FROM COVID-19 WITH PAIN AND PHYSICAL INJURY:

8 -   Fata developed long COVID symptoms of brain fog, fatigue, daytime somnolence, headaches, and muscle and joint pains (Exhibit L and Exhibit P) that were persistent after his vaccination (Exhibit M).

https://www.health.harvard.edu/blog/the-tragedy-of-the-post-covid-long-haulers-2020101521173

9 -  Fata has long had neutropenia before he contracted COVID-19, but did not experience recurrent infections. Since after

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------

he contracted COVID-19 in December 2020, Fata developed neutropenic recurrent infections involving the skin (Bacterial infection on 4-27-2021 responding to Bactrim (Exhibit N), and fungal on 7-9-2021 treated with Nystatin (Exhibit O)), and the prostate (prostatitis on 10-8-2021 (Exhibit P) and recurrent prostatitis on 12-17-2021 treated with prolonged course of antibiotic (Exhibit Q)), that caused him considerable pain and bodily injury. Fata's chronic neutropenia remains persistent over time (Exhibit R).

10 -   Therefore, Fata has at least a moderate or high risk to develop breakthrough COVID-19 infection with severe illness.

11 -   COVID-19 has evaded Fata's immune defenses as new research has shown that COVID-19 can infect the immune cells of the monocyte-macrophage apparatus, in a similar model as HIV infects those immune cells: COVID-19 was the driver of Fata's recurrent infections in prison through the infection of the monocyte-macrophage cell lineage that can lead to organ damages also involved in the constellation of long COVID symptoms.

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7834345/pdf/main.pdf
https://www.nature.com/s41591-021-01283-z.pdf

12 -   Furthermore, recent scientific research has shown that only half of immunocompromised individuals who are fully vaccinated develop antibodies for COVID-19. Therefore, the danger is not over for Fata. See Johns Hopkins University, COVID-19 Vaccines and Immunocompromised People: Fully Vaccinated and Not Protected.

https://www.jhsph.edu/covid-19/articles/covid-19-vaccines-and-immunocompromised-people-fully-vaccinated-and-not protected.html

13 -   Fata's chronic neutropenia is incurable with no remission, manifested with progressive neutropenic recurrent infections since after he contracted COVID-19 in prison that caused him enough pain and bodily injury, and is persistent after vaccination. Mitigating Fata's recurrent infections is not sustainable in prison in light of the poor housing conditions (see paragraph II) and the inevitable continued non-speculative risk of exposure to COVID-19 with severe illness.

II - DEFENDANTS FAIL REPEATEDLY TO IMPLEMENT THE PRISON POLICY AND CDC GUIDELINES FOR CONTACT TRACING AND TESTING TO PROTECT THE LIVES OF STAFF AND INMATES SECONDARY TO COVID-19 EXPOSURE IN FATA's HOUSING UNIT :

14 -   On May 6, 2021, Fata emailed his warden Mr. A. Mendoza as a "New Outbreak of COVID-19" involved two "fully vaccinated inmates" in his housing unit (Exhibit S) who became sick and were isolated. Fata is filing the affidavit of inmate Lorone Elijah (Exhibit T). Fata asked Mr. Mendoza and health services to implement the CDC guidelines for contact tracing and testing to mitigate the spread of the virus. 72 hours have since passed and no action was taken to perform contact tracing and testing of inmates in Fata's housing unit or quarantine the whole unit at that time.

15 - On June 16, 2021, a "New Outbreak of COVID-19" occurred in Fata's housing unit that was announced by case manager Mr. E. Brown in an "Emergency Town hall" around 5:00 pm on that date where at least one inmate, Brandon Polston (B.P.),

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B
-------------------------------------------------------------------------------------

tested positive for COVID-19. B.P. was acutely sick around 9:00 am and later required hospitalization that afternoon. Fata is filing an affidavit of inmate B.P. signed under penalty of perjury (Exhibit U). B. P. gave Fata permission to file his medical and hospital records and confirmation of testing positive for COVID-19 (Exhibit V).

16 - From June 10 to June 16, 2021, Fata had daily direct exposure to inmate B.P. in the computer room as substantiated in B.P.'s affidavit, and had later received the Pfizer COVID vaccine on same date of 6-16-2021 (Exhibit W).

17 - On June 17, 2021, Fata emailed his warden Mr. A. Mendoza asking to implement the CDC COVID-19 contact tracing and testing of all inmates in Fata's housing unit to mitigate the spread of the virus (Exhibit X) and protect the immunocompromised as in Fata's case, for many inmates in Fata's housing unit were experiencing acute sickness with deep cough.

18 - From 6-17-2021 to 6-20-2021, Fata experienced the symptoms of fatigue, muscle and joint pains with diarrhea not knowing whether these symptoms were due to new COVID-19 infection secondary to his known exposure to inmate B.P. or whether these symptoms represented potential side effects to the Pfizer COVID vaccine. There was no need to request treatment for COVID-19, absent testing, as Fata took Tylenol and Ibuprofen from commissary as recommended by Mrs. Mims, RN. Fata received the first dose of the Pfizer COVID vaccine on June 16, 2021, after his known exposure to inmate B.P., standing alone, would defy the official CDC guidance at the time with obvious harm had Fata contracted COVID-19 on that date (Exhibit Y).

19 - See Dr. Anthony Fauci on COVID-19 Response and Vaccine Distribution, C-SPAN (Jan. 6, 2021). https://www.c-span.org/video/?507714-1/dr-anthony-fauci-covid-19-response-vaccine-distribution/ [https://perma.cc/UFK5-7GJN](video interview of Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious diseases, at 8:11, explaining that anyone who has been infected with COVID-19 "should wait about ninety days before getting the vaccine).

III - FATA HAS EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES AT FCI WILLIAMSBURG:

20 - As no intervention was taken by health workers, Fata filed a Grievance on June 18, 2021 (Exhibit Z1) pursuant to BOP Program Statement 1330.13, that the prison administration repeatedly failed to implement the CDC guidelines toward tracing to test all inmates in his housing unit, to protect those at established CDC risk to develop severe illness from COVID, and the unvaccinated or partially vaccinated as Fata had received the first dose of the Pfizer COVID-19 vaccine on June 16, 2021 after his exposure to COVID-19 (Exhibit W).

21 - On June 29, 2021, health services replied to Fata's Grievance and noted " we are considering your request at this time" (Exhibit Z2), but no contact tracing and testing was implemented whatsoever

22 - On July 16, 2021, after one month wait on health services to respond to Fata's Grievance, Fata was notified by Counselor Mr. W. Hitchman who noted "Medical failed to respond" (Exhibit Z3).

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

FROM: 48860039
TO:
SUBJECT: BRIEF - BIVENS- PART II
DATE: 04/26/2022 07:01:23 AM

23 - Fata has filed a BP-229 to his warden on same date of July 16, 2021 (Exhibit Z4) and asked for accountability and explanation why health workers did not act repeatedly to test or quarantine the inmates in his housing unit for COVID-19 as he had requested in his emails and pursuant to case manager outreach.

24 - On 8-24-2021, Fata received the acting warden's Mr. A. Mendoza response dated 8-19-2021 (Exhibit Z5). In his response, # 1088897-F1, Mr. A. Mendoza:

(a) Claimed that FCI Williamsburg has "adopted" the COVID-19 guidance of the CDC and the BOP, through following the same guidance within the correctional setting.

(b) made untrue statement that "contact tracing is conducted following the same guidance", as the record belies his statement after the COVID outbreaks and associated inmates exposures in early December 2020 and on May 6, 2021 and June 16, 2021, "contact tracing and testing under the CDC/BOP guidance" was [not] conducted [nor] performed, but was indeed "ignored and disregarded", as substantiated in Fata's emails to Mr. Mendoza on May 6, 2021 and June 17, 2021 and in Fata's and B.P.'s (see paragraphs 31, 32) Grievances and Administrative Remedy cases.

(c) made factually unfounded conclusions that: "Town hall informational discussions are provided for educational purposes ... this was not done to inform you that you were in fact in direct contact with a positive individual but rather for you to monitor your symptoms". This statement is undermined on 6-16-2021 when Fata told his case manager Mr. E. Brown that he came in close contact with inmate Brandon Polston on and before June 16, 2021 as substantiated in the affidavit of Mr. B. Polston, and in Fata's email to his warden (Mr. A. Mendoza) on 6-17-2021 that he and other inmates were experiencing symptoms.

(d) omitted Fata's medical records that show the wrongdoing in Fata's health care as Fata was inoculated with the first dose of the Pfizer COVID vaccine on the same date of 6-16-2021, after his exposure to Mr. Brandon Polston, and two days after Fata was discovered with a local skin infection on June 14, 2021, defying the CDC recommendation that the COVID vaccine should not be given concurrently with acute illness or infection. The CDC recommendation is to wait if an individual has a short-term illness or infection (Exhibit Y). Instead, Mr. Mendoza adds that "there was no indication or notation during your assessments that you complained of COVID-like symptoms or requested further assistance in regards to a COVID exposure following the Town hall meeting". As stated above, Fata did develop symptoms lasting 4 days following his COVID exposure and his vaccination, absent testing, and Mrs. Mims, RN advised him to take Tylenol and Ibuprofen to control his symptoms.

25 - On August 24, 2021, Fata filed a BP-10 to Region, but did not receive a response (Exhibit Z6). On December 15, 2021,

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B
----------------------------------------------------------------------------------

Fata wrote the Regional Director asking for a response (Exhibit Z7).

26 - On March 10, 2021 Fata submitted a BP-11 to the General Counsel (Exhibit Z8) reiterating his argument of repetitive failure to implement contact tracing and testing and quarantining Fata's housing unit under BOP policies and CDC guidance in early December 2020, on May 6, 2021, and June 16, 2021. Fata expressed the need to carry through the exhaustion of the administrative remedies process to the end. To this date, Fata has not received a response.

27 - In Sum, Defendants knowingly failed to implement prison policies that adopted CDC guidance of contact tracing and testing, in Fata's housing unit in early December 2020, May 6, 2021 and June 16, 2021, after many inmates became sick from COVID-19, and some required hospitalization and even died which created a risk of irreparable harm to Fata and the inmates in his housing unit who were exposed to inmates Lorone Elijah and Brandon Polston.

28 - Health workers have even breached the BOP Program Statement 6031.04. Patient Care, dated June 3, 2014, page 21, Section 17, specifies, Triage / Access to care, "Triage allows truly urgent conditions according to priority of need, to be addressed adequately on the same day, while also allowing more routine conditions or concerns to be addressed at a scheduled appointment". The priority of need associated with the harm from exposure to a COVID inmate should not be considered "elective matter" and should have been addressed on the same day, as the Government notes (Footnote 2) "when an outbreak does occur, any infected inmate is immediately quarantined, and all contacts including entire housing units are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period".

29 - As the facts of this case have evolved, health workers did "absolutely nothing" to act on Fata's emails on May 6, 2021 and June 16, 2021, nor did they act on Fata's complaint or Grievance after they alleged on June 29, 2021, that they were considering it (Exhibit Z2). Health workers disregarded the priority of need for contact tracing and surveillance testing causing bodily injury from COVID-19 to Fata and B. Polston with long-term complications (Exhibit Z9), and ignored to fulfill their duty as gatekeepers to mitigate the spread of the virus under Program Statement P6701.01 (Exhibit J).

30 - Therefore, any decision by prison officials not to implement and follow the CDC guidelines or ignore Fata's repeated notifications and case manager outreach when the harm is obvious, fails as the BOP adopted the CDC guidelines in its policies and its "Infection Prevention Procedures" (Paragraph IV) where the P6701.01 Program Statement did not involve an element of Judgment or choice.

31 - As in Fata's case where health workers "failed to respond" to Fata's grievance as counselor Mr. W. Hitchman noted, Dr. Hoey, Mrs. K. Nolte and the warden Mr. A. Mendoza again "failed to answer" B.P.'s Grievance and administrative remedy case (BP-8 and BP-9) as to why the prison administration failed to protect the inmates and implement contact tracing and surveillance testing that they were made aware repeatedly numerous times (Exhibit Z10).

32 - Instead, while B.P. planned to petition his warden Mr. A. Mendoza for compassionate release at earlier date, upon

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

the COVID-19 virus, the warden used the request as a justification in his response to reject B.P.'s BP-229, "failing to answer" and ignoring the "core complaint" of B.P.'s administrative remedy case and "failing to protect the lives" of prison staff and inmates as specified in the complaint (Exhibit Z11).

IV - DEFENDANTS HAVE BREACHED BOP COVID-19 POLICIES AND PROCEDURES IT HAD ADOPTED THAT BEST CHARACTERIZE FATA's COMPLAINT:

33 - THE BOP COVID-19 MODIFIED OPERATION PLAN AND MATRIX SPECIFIES: (Exhibit Z12)

"BOP pandemic guidance [follows] and [integrates] guidance and direction from CDC, OSHA, DOJ, and established medical best practices"

34 - THE BOP INFECTION PREVENTION PROCEDURES MODIFICATIONS SPECIFIES: (Exhibit Z12)

"Not fully vaccinated inmates [need to] complete a 10-day quarantine as new intakes or if they have a known or suspected exposure to a case of SARS-CoV-2".

and

"Routine screening for incarcerated persons who are not fully vaccinated [should] be conducted at least weekly when common transmission is substantial or high (guidance from CDC)".

35 - Although the above "harm-reduction procedures" represent the remedy of Fata's complaint secondary to his COVID exposure beginning December 2020, on May 6, 2021, and June 16, 2021, none of these BOP non-discretionary procedures was performed or implemented despite Fata's repeated notifications, as health workers knew of the harm and did absolutely nothing to prevent the harm.

36 - May it also be noted that Fata repeatedly asked his acting warden, Mr. A. Mendoza, to "undo harm" by requesting in his email on June 17, 2021 (Exhibit X):

"Honestly, we feel anxious, left alone in the midst of two outbreaks of COVID-19 and MRSA skin infections (Exhibit Z13) and your help and intervention is highly needed and appreciated to protect the elderly and immunocompromised ... I respectfully ask that this time around, this matter is taken more seriously as many inmates are experiencing sickness and deep cough"...

But Fata's request fell on deaf ears.

37 - On April 2, 2022, Fata requested FCI Williamsburg's COVID-19 policies with respect to contact tracing and testing, identifying known or suspected contacts, and quarantining inmates and housing units once an outbreak occurs (Exhibit Z14) and forwarded the email to his warden (Exhibit Z15). To this date, Fata has not received a response from Mrs. K. Nolte.

38 - On April 5, 2022, FCI Williamsburg Associate Warden told Fata during mainline, that FCI Williamsburg adopted the BOP COVID-19 policies and procedures as well as the CDC guidance, as health services do not have their own written COVID-19 policies. Therefore, any decision by FCI Williamsburg officials to disregard Fata's requests repeatedly in early December 2020, and on May 6, 2021, June 16, 2021 and June 29, 2021, is not discretionary, but represents deliberate indifference to his known medical needs.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

FROM: 48860039
TO:
SUBJECT: BRIEF - BIVENS- PART III
DATE: 04/26/2022 07:01:40 AM

V - DEFENDANTS Dr. HOEY AND HSA K. NOLTE HAVE BREACHED THEIR DUTY UNDER PROGRAM STATEMENTS 6190.04,
    AND 6013.01:

39 -   By disregarding and repeatedly omitting contact tracing and testing and quarantining the inmates at risk after exposure to a COVID-19 inmate in Fata's housing unit, Defendants Dr. Hoey (CD) and K. Nolte (HSA), have breached their duty for infectious disease control and management under BOP Program Statement 6190.04, dated 6-3-2014 as specified in Program Responsibility Infectious disease procedures that [incorporate and reference] standards, guidelines and recommendations from HHS, CDC and OSHA (Exhibit Z16). In specific, both defendants stand in defiance to the institution occupational exposure control plan for ...airborne infectious diseases (Tuberculosis exposure noted) that can be implemented after exposure to an inmate with COVID-19 in Fata's housing unit (with airborne particles transmission) to implement the institution infection control and surveillance program, as the Bureau conducts "contact investigations" following any incident in which inmates have been exposed to [airborne diseases] according to CDC guidelines (Exhibit Z17). Inmates will be tested according to the CDC guidelines.

40 - Accordingly, The Program requires the CD and HSA to produce "Evidence of, at a minimum, quarterly infection Control meetings (minutes) and review of surveillance activities that are documented and included as part of the institution's Quality Improvement Program (QIP)" (Exhibit Z16). i.e. those minutes and surveillance activities (COVID-19 surveillance testing) should be disclosed as they include each of the COVID-19 outbreaks that exposed inmates to harm in Fata's housing unit that Fata has claimed in this Brief and the defendants were aware and disregarded the harm in early December 2020, on May 6, 2021 and on June 16, 2021.

41 - Under Program Statement P6013.01, Defendant K. Nolte is required to develop a "written plan" for Quality Improvement on the health care mission and scope of services provided at FCI Williamsburg, and that includes "Infection Control Surveillance" and the Clinical Director Dr. Hoey should measure outcomes associated with evidence based guidance to measure effectiveness of infection control activities (Exhibit Z18): Defendants Nolte and Hoey should disclose their "written plans" required under the policy to show how the institution addressed the new COVID-19 outbreaks and exposure to COVID in Fata's housing unit from December 1, 2020 to June 30, 2021 with respect to contact tracing and testing and quaratining the inmates as indicated.

VI - MEDICAL EXPERT OPINION:

42 - Dr. Jack Goldberg, MD. FACP is a Professor of Medicine at the Rowan school of medicine, is extensively published, and

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

has provided his medical analysis of Fata's medical records pertinent to post-Covid physical injury (Exhibit Z19).

VII - LEGAL ANALYSIS :

43 - The objective component of the deliberate indifference to an inmate medical need is satisfied as B.P.'s serious medical need requiring hospitalization from COVID-19 is obvious that even a lay person would easily recognize the necessity for contact tracing and testing to mitigate the spread of the virus and protect the lives of staff and inmates in Fata's housing unit. Estelle v. Gamble, 429 U.S. 97, 50 L. Ed. 251 (1976). Farmer v. Brennan, 511 U.S. 825, 834 (1994). Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Blackmore v. Kalamazoo Cnty., 390F. 3d 890, 895 (6th Cir. 2004). Under Blackmore, 390F. 3d at 899-900, the Sixth Circuit noted that when the harm is obvious, the Constitutional violation "is not premised upon the 'detrimental effect' of the delay, but rather the delay alone in providing medical care (By failing to test, health services placed Fata at substantial risk of COVID infection with serious illness) creates a substantial risk of serious harm". Id. at 899. See also Shakka v. Smith, 71 F. 3d 162, 166 (4th Cir. 1995)("[A] condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" may violate the Constitution, even if "the complaining inmate shows no serious current symptoms". Here, Fata is not alleging mere negligence or malpractice, Fata is laying the deliberate indifference and incompetence of FCI Williamsburg's warden and health services to act on Fata's repeated requests (Militier v. Beorn, 896 F. 2d 848, 851 (4th Cir. 1990)) that could have prevented B.P. from contracting or spreading COVID-19 and becoming acutely ill requiring hospitalization.

i.e. Health services silence, doing absolutely nothing, ignoring the need to intervene to mitigate the spread of the virus is intolerable and stands in defiance to prison policies and the CDC guidelines of contact tracing and testing, as Fata was also inoculated with the Pfizer COVID-19 vaccine after his exposure to B.P. that stands in defiance to CDC COVID vaccine guidelines as stated above. Same risk of harm also applies to the physical injury that Fata and the above mentioned inmates in Fata's housing unit incurred after their exposure to COVID in early December 2020 (See Section I of this Brief).

44 - Under the subjective component of the deliberate indifference, Defendants had a "sufficiently culpable state of mind" in repeatedly failing to perform contact tracing and surveillance testing. See Farmer, 511 U.S. at 834-35, and that omission to act on tracing and testing or quarantining Fata's housing unit caused bodily injury to B.P. and harm of known COVID exposure to Fata and inmates in his housing unit, knowing that harm will result from COVID exposure. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Farmer, 511 U.S. at 837)("[T]he test is whether the guards know the [detainee] faces a serious danger to his safety and they could avert the danger easily yet they fail to do so". FCI Williamsburg's health workers acted against its BOP policies (P6701.01 and BOP COVID-19 Modified operations and Infection Prevention Procedures Modifications, and 6190.04) and BOP Memoranda as stated above and were aware of facts of the existence of substantial risk of serious harm as repeatedly noted in Fata's emails and in case manager E. Brown's emergency town hall.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

See Farmer, 511 U.S. at 837. See also Woodward v. Correctional Medical Services, 368 F. 3d 917 (7th Cir. 2004)("failure to act in the face of known violations of its written policies is relevant circumstantial evidence to show CMS' knowledge and state of mind").

The "Farmer" actual knowledge standard is substantiated where Mr. A. Mendoza and health workers actually [knew] on June 16, 2021 of B.P.'s serious medical need becoming acutely ill from COVID-19 requiring hospitalization that warranted to implement contact tracing and testing, and they recognized the necessity to intervene on the risk of harm caused to Fata as they have replied on June 29, 2021 to Fata's complaint stating "we are considering your request at this time" (Exhibit Z2), but they never acted to implement contact tracing and testing, nor quarantined Fata's housing unit, nor even answered B.P.'s and Fata's Grievances and B.P.'s Administrative Remedy cases to address the core question of why they repeatedly failed to prevent the harm to mitigate the spread of the virus, the scope and severity of the contagion and to save lives. Delaney v. DeTella, 256 F.3d 679 (7th Cir. 2001)(deliberate indifference established where defendants did nothing after inmate filed grievance and requested medical attention for injuries caused by denial of out-of-cell exercise). See also Simmons v. Cook, 154 F.3d 805, 808 (8th Cir. 1998)("Corrective inaction" amounted to deliberate indifference).

45 - Therefore, FCI Williamsburg's health workers did violate Fata's constitutional rights to his serious medical needs from known exposure to COVID-19, requesting contact tracing and testing that was clearly established based on the particular facts of this case, as a reasonable juror could conclude that Mr. A. Mendoza and health workers subjectively knew of and repeatedly disregarded the emails notifications and requests that Fata was at serious risk of harm from COVID-19, even knowing that he falls under a CDC recognized category to develop serious illness from COVID-19, being diabetic and immunocompromised.

46 - The irony is that Fata was inoculated with the first dose of the Pfizer COVID vaccine on the same date after his exposure to COVID-19, absent testing, which creates a significant risk of harm as the CDC recommends that the COVID vaccine should not be given concurrently with an acute illness or infection (COVID-19, skin infection). See Washington v. Federal Bureau of Prisons, 2018 U.S. Dist. LEXIS 197698 (D. South Carolina. Nov. 20, 2018)(the Court joins other courts in concluding that it has authority to remedy unconstitutional conduct, even when that authority infringes upon BOP's general discretion over inmate medical treatment ...). May it be noted that defendant Mr. B. Meeks was the warden at FCI Williamsburg at the time the injury took place.

VIII - QUALIFIED IMMUNITY:

47 - Based on the facts of this case, no reasonable BOP's [official] could have concluded that it was constitutionally permissible to omit and repeatedly disregard contact tracing and testing defying the prison policies and the adopted CDC

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

guidance with no consideration to Fata's harm from COVID exposure being at a CDC-recognized health risk to develop severe illness that they were aware repeatedly numerous times. Therefore, defendants conduct with deliberate indifference toward Fata's medical needs was unlawful in the situation they confronted as described above, thus disqualifying them from immunity. Taylor v. Riojas, 141 S. Ct. 52 (Nov. 2, 2020)(no reasonable correctional officer could have concluded that ... it was constitutionally permissible to house Taylor in such deplorable unsanitary conditions).

See also Cox v. Quinn, 828 F. 3d 227, 238 n.4 (4th Cir. 2016)(a reasonable jury could decide that the correctional officers knew the inmate faced a serious danger to his safety and could have averted the danger but failed to do so ... that their response to the risk was inappropriate...the inmate [repeatedly] informed the officers that he was being threatened and robbed... ).

IX - DEFENDANTS ACCOUNTABILITY FOR THEIR DELIBERATE INDIFFERENCE AND REPEATED CORRECTIVE INACTIONS:

48 - Defendants repeatedly and knowingly breached their duty as gate keepers to mitigate the spread of the virus and prevent irreparable injury from COVID-19 exposure through compliance to implementing prison policies, memoranda and Program Statements that adopted the CDC guidelines of contact tracing and testing and quarantining Fata's housing unit as the Government noted (paragraph 28 in this Brief) to protect the lives of staff and inmates from COVID-19, causing the plaintiff physical injury and long-term complications of long Covid plus neutropenic recurrent infections that resulted from the defendants conduct and corrective inactions that breached their duty. Such duty to act on prison policies that adopted CDC guidance as remedy to mitigate the foreseeable harm from repeated exposures to new COVID outbreaks present in Fata's housing unit in congregate setting (Footnote 3), is not a product of BOP discretion as it does not involve an element of judgment or choice and does not as well create any undue cost or hardship, as prisoners have a constitutional right to adequate medical care while incarcerated, free from officials' deliberate indifference to their known medical needs. Scinto v. Stansberry. 841 F.3d 219 (4th Cir. 2016).

49 - Pursuant to 28 U.S.C. &1746, I declare and verify under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Farid Fata    *[signature]*  4-26-22
#48860-039
FCI Williamsburg; 8301 Hwy 521; Salters, SC 29590

---

Footnote 1:
See Roderick Sanford v. United States. C/A No. 0:21-cv-2552-RMG. In the Magistrate Judge's Report and Recommendation (R&R), ECF No.54, the Magistrate found that COVID-19 BOP Memoranda "Action Plans" were not Discretionary. The BOP guidance documents contain language that appears mandatory. https://www.bop.gov/foia/docs/2020_COVID_memos.pdf

Footnote 2:
See the Government's Brief in United States v. Anderson. Case No. 1:12-cr-00041-DHB-BKE, Doc. 90, page 9, S.D. Georgia, Dec. 8, 2021

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

FROM: 48860039
TO:
SUBJECT: MEMORANDUM BRIEF - PART IV
DATE: 04/26/2022 07:01:04 AM

Footnote 3:
COVID-19 vaccination does not change the equation to evaluate the risk of harm from exposure to COVID-19 stated in Fata's claim as the CDC reported on December 10, 2021, in its COVID-19 Science Update, Edition 116, that during a Delta variant outbreak in a federal prison, unvaccinated and vaccinated persons had similar duration of culturable virus suggesting similar transmission risks. In congregate settings like prisons, vaccinated inmates have similar risk to transmit and carry the virus when they become infected as their unvaccinated counterparts.

https://www.cdc.gov/library/covid-19/12102021_covidupdate.html

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----

FROM: 48860039
TO:
SUBJECT: CERTIFICATE OF SERVICE
DATE: 04/26/2022 07:01:11 AM

CIVIL ACTION CASE nO.

## CERTIFICATE OF SERVICE

The petitioner / movant certify that a copy of the following instrument has been forwarded to the below individual,

VIA U.S. mail, delivered to the institution mailroom.

Respectfully sumitted ____26th____ day of ___April___ 2022

SERVED _____                              /S/ _____