RECEIVED USDC
CLERK, CHARLESTON, SC
2022 NOV -3 AM 8:53

Civil Case No. 2:22-cv-01368-MGL-MGB

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FARID FATA, )
Plaintiff, )
)
v. ) Hon. Mary Geiger Lewis
) Magistrate Mary Gordon Baker
BRIAN K. DOBBS ) Case No. 2:22-cv-01368-MGL-MGB
A. MENDOZA )
STEPHEN HOEY )
K. NOLTE, )
Defendants. )
_____/

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

Plaintiff, Farid Fata ("Fata"), respectfully submits his objections to the Report and Recommendation (R&R) ECF No. 27.

A - AVAILABILITY OF BIVENS CLAIM: (ECF NO. 27, Page 10)

"The Magistrate construes Fata's Complaint as alleging a "Conditions of Confinement claim", Zeller v. Northam, No. 7:21-cv-393, 2022 WL 3711892, at *7 (W.D. Va. Aug 29, 2022)":

As Fata's Complaint arise from defendants' inactions or actions that repeatedly failed to implement non-discretionary, binding instructions of the BOP COVID-19 Response Plan that do amount to unconstitutional conduct in conscious disregard of an excessive risk of harm to Fata's known serious medical needs, being diabetic, neutropenic, and immunocompromised, causing Fata to contract COVID-19 and suffer permanent physical injury, Fata asks the Court to hold his Bivens case, pending the Fourth Circuit holding, under Tate v. Harmon, No. 21-6109, 2020 WL 7212578 (W.D. va. Dec. 7, 2020) as to whether a Bivens remedy "presently exists for Eighth Amendment claims alleging unlawful conditions of confinement". And as the Supreme Court did acknowledge in "Egbert" that a Bivens action still exists for "inadequate medical care claims" under the Eighth Amendment (Footnote 1).

2 - The Magistrate notes: "In Plaintiff's response in opposition to the Motion to Dismiss, he alleges for the first time that "Defendants completely ignored the severity of his post-Covid physical injuries". In support, Plaintiff asserts that ..., he did not see a urologist until August 1, 2022, (Id. at 32-33), Plaintiff further asserts he has not yet received a "hematological work-up". Id at 33. The R&R notes that "this claim is

not properly before the Court, as Fata cannot amend the complaint by alleging new claims in his response to a motion for summary judgment". R&R Page 11.

The R&R misread Fata's post-Covid physical injuries of neutropenic recurrent infections that were filed in Fata's Complaint on 4-28-2022, (R&R Pages 4 and 5), as Fata had asked for outside referral and was assured that he will see a urologist and hematologist (ECF No. 26, Doc. 40, 43). As of 4-28-2022, Fata did not know that health defendants' assurances to refer him to see outside specialists "urgently" would not materialize and would be delayed for 10 months, that deprived him to receive a standard treatment NEUPOGEN (G-CSF) for 18 months, aimed to boost his neutrophil count. It was not until end of May 2022, (ECF No. 26, Doc. 45) that Fata discovered that he was not scheduled to see [any] specialist (Footnote 2).

Fata again obtained a second opinion from Dr. Jack Goldberg, MD, Board certified hematologist on 8-11-2022, who updated the Court that Fata should have received the standard G-CSF (NEUPOGEN) treatment to boost his neutrophil count that could alter Fata's medical care, from the inception of Fata's post-Covid recurrent infections (ECF 26, Doc. 60). See Neupogen FDA label approved in 1991, at https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/103353s51841b1.pdf

Defendants have not refuted Fata's assertions. The Court asked the Defendants to respond to Fata's Reply Brief by 10-11-2022 (ECF No. 26), but they failed to do so.

Over 18 months of developing post-Covid neutropenic recurrent infections, Fata was denied the standard G-CSF (NEUPOGEN) treatment as shown in the encounters filed in Fata's Complaint (R&R pages 4 and 5) that the magistrate considered, as these clinical encounters never considered neutropenia as "causation" to Fata's post-Covid physical injuries from relapsing infections that they were aware through reviewing Fata's blood tests results (Dkt. No. 1-19), and even before Fata contracted COVID-19 (ECF No. 26, Doc. 20). As to the R&R's "hematological work-up", Fata's January 28, 2022, email to defendant Hoey asked to obtain a hematological work-up of immunoglobulin G subtypes that Dr. Hoey denied, as this immunodeficiency work-up could benefit Fata from immunoglobulin infusion to boost his immune system (ECF 26, Doc. 42, 60). Defendants knew that Fata's neutropenic infections required a hematology consultation, but they never acted. Therefore, the "hematological work-up" consolidates Fata's Complaint (R&R Pages 4-5).

Fata has requested a Jury trial with medical experts testimony where a Jury could determine whether the defendants' actions or inactions pertaining to policies on COVID-19 or toward treating Fata's known post-Covid physical injuries are unconstitutional (R&R, Page 15), as nowhere under "Bivens" and "Carlson"

did the Supreme Court exclude "an unusual punishment clause for Failure to provide adequate "urgent" (Doc. 43) treatment to a prisoner such in Fata's case where health defendants inactions to treat Fata's neutropenia since Fata contracted post-Covid recurrent infections, denied Fata the standard G-CSF - NEUPOGEN treatment to remedy his post-Covid physical injuries. See Collins v. Belzer, 2022 U.S. Dist. LEXIS 85570. C/A No. 2:20-03752-RMG-MGB (D.S.C. March 18, 2022).

B - FATA'S BIVENS REMEDY IS APPROPRIATE UNDER CARLSON:

Carlson announced two exceptions to Bivens Rule. The first [applies] when defendants demonstrate "special factors" counseling hesitation in the absence of affirmative action by Congress. Carlson v. Green, 446 U.S., at 18, (1980). Fata objects to the R&R (Page 15) and asserts that there is "no rational reason (not even one) to pause" as his medical condition falls under "Carlson" and shares a comparable risk of harm from contracting post-Covid physical injuries that required "urgent" intervention (ECF 26, Doc. 43).

Fata filed exhibits (ECF No. 26, Doc. 48, 60, 61) showing that his post-Covid neutropenic infections can cause death, and have caused Fata permanent damage. Furthermore, COVID-19 and asthma can both involve the respiratory tract, sharing the same "mechanism of injury" to the lungs and cause of death from respiratory failure and overlapping infections.

The R&R special factors (Page 15) imply that Congress is better positioned to create remedies in the context of chronic medical care in Federal Prisons and to "weigh the costs and benefits" of creating a new damages remedy under "Egbert". The issue is "whether the chronic care does fall under gross incompetence that rise to the level of constitutional injury, while the remedies provided by Congress are not effective to remedy the Constitutional injury". And this justifies Fata's request for a jury trial with medical experts testimony (Footnote 3), where a reasonable jurist can determine that defendants inactions to treat Fata's neutropenia causative of his infections is unconstitutional.

C - ALTERNATIVE REMEDIES : R&R , Pages 15-16.

The second [applies] when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective". Carlson, 446 U.S., at 18-19, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (emphasis in original). None of the "alternative remedies" that the R&R has provided, foreclose Fata's Bivens action here. And none of these alternative remedies is considered as "comprehensive" and "meaningful" substitute for recovery directly under the Constitution and viewed as "equally effective". Correctional Services Corp. v. Malesko, 534 U.S. at 72, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001)(noting that remedies available to the Plaintiff

3

were "at least as great, and in many respects greater, than anything that could be held under Bivens"); Minneci, 565 U.S., at 120, 132 S. Ct. 617, 181 L. Ed. 2d 606 (rejecting Bivens action for Eighth Amendment violations against employees of a privately operated federal prison because "state tort law authorizes adequate alternative damages actions-actions that provide both significant deterrence even if crafted by the Executive Branch rather than Congress, and even if wholly nonparticipatory and lacking any judicial review, is sufficient to bar a court from recognizing a Bivens remedy).

C -1- THE BOP GRIEVANCE SYSTEM :

Fata has filed administrative remedies at all levels, to correct the inadequate medical care he received. As Fata noted in his Reply Brief in Opposition, these appeals turned out to be nothing but an exercise of administrative futility that failed to address the merits of Fata's case, but focused on technicalities. Obviously, this alternative is not a substitute that rise to "a remedy under the Constitution viewed as [equally effective]" to Bivens relief.

C - 2- THE FTCA :

The R&R was silent to the defendants' contention that the FTCA offers an alternative remedy for claims like Fata's. The Supreme Court does not endorse this argument, and for good reason. The Supreme Court repeatedly has observed that the FTCA does not cover claims against Government employees for "violation[s] of the Constitution of the United States". 28 U.S.C. & 2679(b)(2)(A); see Willkie v. Robbins, 551 U.S. 537, 553, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007); Carlson, 446 U.S. at 14, 20 ("Congress views FTCA and Bivens as parallel, complementary causes of action"); Correctional Services Corp. v. Malesko, 534 U.S. 61, 68, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001)(noting that it was "crystal clear" that "Congress intended the FTCA and Bivens to serve as parallel and complementary sources of liability" (internal quotation marks omitted)).

The Supreme Court reaffirmed that by carving out claims "brought for ... violations of the Constitution" from the FTCA 's "exclusive remedy for most claims against Government employees arising out of their official conduct", "Congress made clear that it was not attempting to abrogate Bivens" and instead "simply left Bivens where it found it," Hernandez v. Mesa, 589 U.S.__, and n. 9, 140 S. Ct. 735, (2020)(slip op., at 16-17, and n. 9.

CASE No. 2:22-cv-01368-MGL-MGB

C -3- INJUNCTIVE RELIEF :

In the prison context, Injunctive Relief pursuant to 28 U.S.C. 1331, is limited to claims brought against the United States directly, or against federal officers acting in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985). Accordingly, "Injunctive Relief" as alternative remedy does not apply to Fata's Bivens suit, as Fata seeks relief against the Defendants in their individual capacities.

In sum, the above remedies for relief do not provide "even a single" rational reason to defer to as they are not viewed as [equally effective] to Bivens relief under the Eighth Amendment.

D - PLAINTIFF'S CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

(R&R, Pages 16-17) :

Fata objects to the R&R misreading the basic elements to treating Fata's post-Covid physical injuries characterizing the "defendants' conduct at issue" simply based on an "alleged eight-month delay in seeing the urologist and at least a ten-month delay in providing a hematology consultation in addition to the R&R's confusion toward the content of the "hematological work-up" (R&R Page 17).

This is exactly the heart of the problem that the R&R failed to address through a comprehensive review of the record and the urgent need for a hematology consultation and hematology expert opinion from the inception of Fata's post-Covid neutropenic infections (R&R pages 4 and 5) when Fata developed a Staph skin infection on April 27, 2021; a fungal or yeast skin infection on July 9, 2021; Prostatitis on 10-8-2021; and recurrent prostatitis/UTI on 12-7-2021. Instead, Fata was left without a treatment plan to his neutropenia with a non-speculative risk of recurrence as Fata did develop Staph Blepharitis (ECF No. 26, Doc. 37) on 4-26-2022, and recurrent UTI on June 8, 2022 (ECF No. 26, Doc. 48).

Had health defendants scheduled the outside hematology consultation earlier before Fata had developed symptomatic urinary tract infection on June 8, 2022 (ECF No. 26, Doc. 48), as they had promised Fata in November 2021 (ECF No. 26, Doc. 40) , and had they referred Fata to see the hematologist from the inception of Fata's post-Covid neutropenic relapsing infections that they were aware, from April 27, 2021, to December 17, 2021, G-CSF (NEUPOGEN) therapy would have altered

Fata's medical care at the time. G-CSF shortens the duration of neutropenia as it allows faster recovery of the urinary tract infection, with superior infection control and relief of symptoms related to UTI (pelvic pain, urinary burning, etc), something that health defendants promised to do but repeatedly failed to deliver (Doc. 45 and 47). G-CSF (NEUPOGEN) is also shown to decrease the risk of hospitalization from neutropenic infections.

Accordingly, health defendants have subjected Fata to obvious harm from post-Covid infectious complications and deprived him to benefit from the standard G-CSF (NEUPOGEN) treatment, in a similar [risk of harm] seen in "Carlson", as

(a) Carlson was given the "wrong medication" to treat his asthma, while Fata was denied the "standard medication" (NEUPOGEN) to treat his post-Covid neutropenic recurrent infections. Even a lay person would recognize that over the past 2 years, since after Fata contracted COVID-19 in December 2020, Fata's post-Covid neutropenic infections required the opinion of a blood specialist, that health defendants [knew] but failed to raise in their encounters that were considered in the Magistrate's analysis (R&R Pages 4 and 5), until after Fata obtained a second opinion from Dr. Jack Goldberg, MD, FACP, Board certified in Internal Medicine and Hematology-Oncology (ECF No. 26, Doc. 42).

(b) Fata's risk of harm relates to the same "mechanism of injury" as in "Carlson", because "contracting COVID-19 and suffering post-Covid physical injuries" and "exacerbation of asthma" can both lead to the same cause of death that is "respiratory failure" as both diseases affect the respiratory tract and cause overlapping systemic infections.

Fata is not disputing that he received antibiotics for his six post-Covid relapsing infectious episodes (R&R page 17), except that the prostatitis episode on 10-8-2021, was incompletely treated with only 10-14 days course of antibiotics and subsequently Fata received a 30-day course for [recurrent] prostatitis on 12-17-2021. But antibiotics treat the infections [alone] and not the neutropenia as causative factor. Even a lay person would easily recognize the necessity to see a blood specialist to address Fata's serious medical needs from post-Covid neutropenic recurrent infections. Iko v. Shreve, 535 F. 3d 225, 241 (4th Cir. 2008). A reasonable jurist would ask what caused Fata to develop six neutropenic infectious episodes over 18 months since after he contracted Covid-19 in December 2020. THEREFORE, Fata's main factual objection is that the R&R misread the requirement to treat the causation of Fata's relapsing neutropenic infections that can be life-threatening since the inception of his infections, caused by Fata's

(a) Neutropenia that defendants were aware (ECF No. 1, Exhibit R; and ECF No. 26, Doc. 20), and should

6

have salvaged this issue with Neupogen as standard treatment as noted above, based upon the hematology expert opinion of Dr. Jack Goldberg.

(b) Immunoglobulin G subtype deficiency that can cause immunodeficiency that health defendants ignored to assess upon Fata's email to Dr. Hoey on January 28, 2022, (ECF No. 26, Doc. 42) where Fata could benefit from immunoglobulin infusions to build his immunity (ECF No. 26, Doc. 60 and Doc. 61).

And that would answer the R&R's uncertainty as to misreading Fata's exhibits as the magistrate noted: "it is unclear what a "hematological work-up" would contain, if not lab results" (R&R page 17). In addition, the R&R remained silent as to why defendants failed to file affidavits refuting Fata's claims of treatment deficiencies in Fata's post-Covid physical injuries, as Fata has raised them in his Reply Brief (ECF No. 26). Furthermore, as the R&R notes on page 17, "Similarly, plaintiff has attached to the Complaint portions of his medical record, which show that medical staff routinely considered Plaintiff's medical concerns and treated him during the period at issue". The R&R adds under Footnote 7 on page 17:

"While the undersigned has not considered these records (Dkt. No. 26-3) in association with the instant motion, they further indicate Plaintiff has received consistent medical treatment":

The R&R lacks precision, "For repeated failures to treat Fata's relapsing neutropenic infections over 18 months with the standard NEUPOGEN treatment disregarded an excessive risk to Fata's health and this is substantiated by Fata's complaint that the Magistrate considered as none of Fata's clinical encounters treating those infections (R&R pages 4 and 5) ever addressed Fata's neutropenia as causation to Fata's recurrent infections, nor raised the need to refer Fata for outside hematology consultation, though they have reviewed Fata's blood tests results. Jackson v. Lightsey, 775 F. 3d 170, 178 (4th Cir. 2014).

Fata had asked defendant Nolte to produce evidence that on November 17, 2021, Fata was indeed scheduled to see the outside specialist (urologist, hematologist) as she had noted (ECF No. 26, Doc. 40), which is simply untrue. On January 28, 2022, Fata notified defendant Hoey that Fata had obtained a hematology second opinion (ECF 26, Doc. 42), and Fata asked him to honor his constitutional medical needs, but Dr. Hoey failed to refer Fata for a hematology consultation that was repeatedly deferred and denied the "hematological work-up" of immunoglobulin G subtypes as the second opinion recommended.

As a result, Fata has not seen a hematologist for ten months, a delay that subjected Fata to pain and suffering as he developed new infections (Staph Blepharitis on 4-26-2022, and UTI on June 8, 2022) that no human, whether a prisoner or not, should ever undergo. Krug v. Loranth, No. 1:13-cv-01409, 2014 WL

4955365, at *10 (D.S.C. Sept. 29, 2014)(citing Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008); Webb v. Driver, 313 F. App'x 591, 593 (4th Cir. 2008))("A significant delay in medical treatment may give rise to a constitutional violation" if the "delay causes unnecessary prolonged pain and suffering").

Fata has established a serious medical need to treat his post-Covid neutropenic infections with G-CSF (NEUPOGEN) and has demonstrated that failure to treat his neutropenia has resulted in further physical injury from recurrent infections (Staph Blepharitis and UTI) and the unnecessary and wanton infliction of pain, as pain was reported in Fata's medical records that the magistrate considered, (R&R pages 4-5), and was associated with the neutropenic infections.

As a threshold matter, the Farmer actual knowledge standard is well satisfied, as both health defendants [knew] that Fata was neutropenic and should see a hematologist. Fata was assured repeatedly that he was scheduled to see the outside specialists "urgently" (ECF No. 26, Doc. 43), which demonstrates a serious medical need. But health defendants had a culpable state of mind in repeatedly failing to schedule Fata ASAP as promised, knowing that harm will result from contracting a new neutropenic infectious episode. As a result, Fata developed a new UTI on June 8, 2022, with pelvic pain and urinary burning (ECF No. 26, Doc. 48). See Jackson v. Lightsey, 775 F. 3d 170, 178 (4th Cir. 20140([T]he test is whether the guards know that [detainee] faces a serious danger to his safety and they could avert the danger easily yet they fail to do so). Militier v. Beorn, 896 F. 2d 848, 853 (4th Cir. 1990)("failure to act" on a known transfer to cardiology unit).

Nor did health defendants provide "alternative remedies / options" to treat Fata's neutropenia that protect Fata from the harm of a new or recurrent infectious event, such as contacting the hematologist for opinion and guidance to treat Fata in some way as directed by the hematologist before Fata's scheduled appointment. Creech v. Nguyen. 1998 U.S. App. LEXIS 18306 at *26 (4th Cir., Aug. 7, 1998). In Creech, the Fourth Circuit noted :

> "At bottom, Dr. Nguyen cannot escape liability on this issue because his "ASAP" notation evidences that he strongly suspected Creech had a serious medical need to be returned to MCV's oral surgery for postoperative care, but failed to take steps to confirm his suspicion...he can expedite the process by personally informing the appointment clerk that he wants the prisoner to be seen...as soon as possible, or by personally telephoning specialists if he "really needed" to consult with a specialist".

CASE No. 2:22-cv-01368-MGL-MGB

The Fourth Circuit added :

> "At a minimum, Dr. Nguyen could have contacted Creech's oral surgeon to find out whether he, Dr. Nguyen, or a dentist at Powhatan could have treated Creech in some way as directed by the oral surgeon before Creech could be returned to the clinic in order to prevent Creech from suffering permanent physical harm {1998 U.S. App. LEXIS 26}. The record contains evidence from which a reasonable jury could have found that Dr. Nguyen disregarded Creech's serious medical need to be returned to MCV's oral surgery clinic for post-operative care".

The R&R (Page 15) raised the question under "Egbert", "whether Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed, in the context of chronic medical care in federal prisons, as the government has already provided alternative remedies that protect plaintiff, including the administrative and injunctive relief and Congress passage of the PLRA".

In Reply, as Fata noted earlier, these alternative remedies do not independently foreclose Fata's Bivens action as Fata had pursued the Administrative Remedy Program: As a result, there was no deterrence of the health defendants' unconstitutional actions individually. Remedial processes were not sufficient to secure an adequate level of deterrence that would foreclose Fata's relief.

Accordingly, Fata's Grievance was emailed to defendant Nolte on June 18, 2021 (ECF No. 26, Doc. 7). On June 29, 2021, defendant Nolte replied "we are considering your request at this time", but no action was ever taken to remedy Fata's complaint, which preceded Fata's post-Covid physical injuries that followed on July 9, 2021, October 8, 2021, and December 17, 2021, as the remedial process could not protect Fata and deter health defendants from offering Fata false promises to schedule him to see outside specialists, ASAP, that extended from November 17, 2021 to May 30, 2022, that Fata did not discover until [after] new post-Covid physical injury developed when Fata was diagnosed with recurrent UTI, [absent] any consultation with [any] outside specialist (ECF No. 26, Doc. 48). Concurrently, Fata's repeated requests to staff dated May, June, September 2022, (ECF No. 26, Doc. 9) in which Fata asked for a unit counselor to access the administrative remedies forms needed for him to complete the Administrative Remedy Program (R&R, page 9) has exhausted Fata's efforts to obtain relief but was not sufficient to secure an adequate level of deterrence. Therefore, the BOP Administrative Remedy Program could not foreclose Fata's Bivens claim, and could not cover the full breadth of harm. Fata's Bivens was concerned with deterring the unconstitutional actions or inactions of the defendants individually in particular incidents.

The PLRA's purpose and text lead to the conclusion that it is a statute about process, not the substantive requirements for relief. See Nussle, 534 U.S. at 524 (requiring PLRA exhaustion for federal prisoners' Bivens actions). No significant meaning can be attributed to the fact that Congress said nothing about the availability or unavailability of monetary damages to incarcerated plaintiffs. Cf. AMG Capital Mgmt., LLC v. FTC, 141 S. Ct. 1341, 1351, 209 L. Ed. 361 (2021)("[When 'Congress has not comprehensively revised a statutory scheme but has made only isolated amendments...[i]t is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of [a court's] statutory interpretation."); Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 501, 106 S.Ct. 755, 88L. Ed. 2d 859 (1986)("The normal rule of statutory construction is that if Congress intends to change the interpretation of a judicially created concept, it makes that intent specific."). The PLRA does not provide "sound reasons to think Congress might doubt the efficacy or necessity of a damage remedy" here. Abbasi, 137 S.Ct. at 1858 (citation omitted). Fata suggests no other legislative action that would cause this Court to hesitate.

Allowing Fata's post-Covid physical injuries medical treatment Bivens claim to proceed does not risk an undue "impact on government operations systemwide". Abbasi, 137 S.Ct. at 1858. Generally, "a Bivens claim is brought against the individual official for his or her own acts," with {2022 U.S. App. LEXIS 30} the purpose "to deter the officer" from further unconstitutional actions.Id. (emphasis in original). Fata's medical treatment case falls squarely within that central Bivens purpose and does not threaten judicial overreach into the operation of another branch.

Fata's Bivens does not impact national security or raise cross-border concerns as in "Egbert" that clearly counsel against a Bivens remedy. Fata's medical treatment claim of his post-Covid physical injuries, if it were to succeed, would punish the health officer for acts certainly prohibited by the prison prison administration's rules, but does not burden the prison administration's operations, and does not intervene in the separation of powers concerns. Fata's medical treatment claim will not open a floodgate of claims against "countless decisions taken by prison officials", nor will it set a precedent to take further or broader position on the scope of claims against health prison officials that might otherwise warrant a Bivens remedy, as Fata's medical condition accounts for his "unique and rare" health circumstances combining post-Covid neutropenic recurrent infections with Immunoglobulin M deficiency.

To end, although Fata's post-Covid physical injuries medical treatment Bivens claim may represent a

modest extension of Bivens, no special factors caution against extending the remedy to encompass this well established claim brought mainly against two health defendants under the same constitutional provision applied in a well-recognized Supreme Court Bivens Case. Simply put, "if the principles animating Bivens stand at all, they must provide a remedy" here.

E - CONCLUSIONS :

Fata's objections to the R&R are factual, supported by the record, and reverse the outcome of the R&R as the Court addresses the complexity of Fata's post-Covid physical injuries based on medical experts opinion. Fata's claim is not different in a meaningful way from "Carlson", and after applying the "Egbert" framework, Fata's post-Covid physical injuries can become severe as neutropenic infections have a reported mortality of 36%, have caused Fata permanent damage, and certainly can cause death under similar "mechanism of injury". See Footnote 3.

Even based on Fata's medical records that the magistrate considered (R&R pages 4 and 5) with four documented post-Covid neutropenic recurrent infections, the R&R failed to raise, amid its "uncertainty" toward Fata's hematological work-up for immunodeficiency (ECF No. 26, Doc. 42 and 60, 61), two grounds of serious medical needs that can cross the threshold into constitutional injury as Fata presented them on record. Fata moves the Court and asks;

1- Is it constitutional whether a patient should wait 18 months from the inception of his neutropenic recurrent infections, to see a blood specialist to evaluate his neutropenia that placed him at non-speculative risk to develop further infections that caused pain and suffering ?

2- Is it constitutional that a prisoner be denied the standard treatment G-CSF (NEUPOGEN) for 18 months that can alter his medical care as neutropenia is causative to his post-Covid recurrent infections ?

Respectfully Submitted,

*Farid Fata* 10-31-22

Farid Fata
#48860-039
FCI Williamsburg
8301 U.S. Hwy 521,
Salters, SC 29590

---

Footnote 1:

In Egbert v. Boule, 142 S.Ct. 1793, 213 L. Ed. 2d 54 (2022), the Supreme Court did acknowledge that a Bivens action still exists for "inadequate medical care claims" under the Eighth Amendment. Egbert is

distinguished from Fata's Bivens, as it considered two Bivens claims to the Fourth Amendment excessive force claim, and the First Amendment retaliation claim, and national security concerns unreleated to Fata's Eighth Amendment Bivens claim. See also Torres v. Milusnic, Case No. 2:20-cv-4450 (CD Cal Oct. 11, 2022).

Footnote 2:

Fata was not alleging new claims as he replied to defendants' downplaying the [severity] of his post-Covid physical injuries (R&R Pages 4-5), they described as "complaint over his ear treatment" (ECF No.23, page 24), and to their Deliberate Indifference argument. Fata uncovered defendants' repeated misconduct in handling his care related to his physical injuries.

Health Defendants' assurances to Fata to see the outside specialists "urgently" extended from November 17, 2021 (ECF No. 26, Doc. 40), to February 11, 2022 (ECF No. 26, Doc. 42), to February 24, 2022 (ECF No. 26, Doc. 43). It was not until the end of May 2022 (ECF No. 26, Doc. 45 and 46) that Fata learned that he was not scheduled to see any outside specialist as he was promised, which warranted him to reach out to health defendants again (ECF No. 26, Doc. 47).

On August 1, 2022, after Fata met the urologist, Fata learned his post-Covid physical injuries and episodes of relapsing infections are purely hematological caused by his neutropenia (ECF No. 26, Doc. 59). On 8-11-2022, Fata obtained again a second opinion from Dr. Jack Goldberg (ECF No. 26, Doc. 60 and 61), and informed/notified the court of these events in his Reply Brief that the R&R did not consider. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gordon v. Leeke, 574 F. 2d 1147, 1151 (4th Cir. 1978)(the Court is required to liberally construe Plaintiff's pleadings being held to a less stringent standard than those drafted by attorneys).

Footnote 3:

The analysis of Dr. Jack Goldberg, MD, Board certified hematologist-Oncologist, rebuttals the R&R position to compare the severity of Fata's medical condition related to his post-Covid physical injuries, to Washington's (Washington v. Fed. Bureau of Prisons, No. 5:16-cv-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022)) as Washington's blindness from glaucoma may not be fatal, but Fata's neutropenic infections can be fatal with reported mortality > 36%, available at

https:// www.rcpjournals.org/content/clinmedicine/13/2/185

For neutropenic infections are considered a medical emergency to treat ASAP. Even the BOP COVID-19 response plan recognizes that "male UTI's" such as in Fata's case, should be evaluated and treated on the same-day (ECF No. 26, Doc. 49).